In the Matter of the Application of LEOPOLD A. MEYER,
Appellant, for a Writ of Habeas Corpus.

EDWARD ROBITZEK, Respondent.

Appeal — practice — a perfected appeal does not, in itself, stay
the execution of the judgment or order appealed from — what
proceedings necessary under statutes and practice of the courts,
to obtain a stay — habeas corpus for custody of an infant — appeal
from order therein must be dismissed when the appellant and
infant are intentionally without the jurisdiction of the courts
of this state.

1. A perfected appeal does not stay the execution of the judgment
or order appealed from, and to obtain a stay certain requirements
must be complied with, either as to giving an undertaking or get-
ting an order of the court. While an appeal, regularly taken and
perfected, is taking its course in the appellate court the respondent
may, notwithstanding, unless stayed, proceed to enforce his judg-
ment or order, and the appellant's only remedy is to enforce resti-
tution when he becomes entitled to it.

2. Although the legislature in enacting section 1310 of the Code
of Civil Procedure in place of sections 339 and 342 of the Code of
Procedure, omitted the provision that the only way proceedings
upon a judgment or order might be stayed, after an appeal, was by
a motion directly to the court for that purpose where security suffi-
cient to protect the respondent might be required, and substituted
therefor general language to the effect that proceedings to enforce
a judgment or order shall not be stayed by a perfected appeal unless
"the other acts, if any, required to be done   *   *   *   have been
done," such language should not be construed as confined to acts
required by statute, but should be construed to include those
required by the practice of the courts as it has heretofore existed,
and one of these acts was to obtain an order expressly directing a
stay, when it is desired to stay proceedings upon an appeal from an
order granting a new trial.

3. The Appellate Division reversed an order of the Special Term,
in habeas corpus proceedings, which gave the custody of a child to
its father, ordered that the matter be referred to a referee to take
proof of the facts, and directed the return of the child to its mater-
nal grandparents. The father, who had taken the child to another
state, after the granting of the Special Term order, caused an

appeal to be taken from the order of the Appellate Division and sailed for England, taking the child with him, before such order could be served upon him, and still remains there without the jurisdiction of the courts of this state. Before he sailed the appellant openly asserted that he would not give up the child even if he should be held in contempt, and these statements and acts of appellant show that he does not intend to obey the order from which the appeal is taken, or any other order which may be made in favor of respondent. *Held*, that, under the circumstances, this appeal from the order of affirmance should be dismissed unless the appellant, on or before a date fixed by the court, complies with the order of the Appellate Division as to custody and possession of the infant or complies with the terms that may be imposed on him by the Supreme Court as a condition of granting a stay of proceedings under order appealed from.

Reported below, 156 App. Div. 174.

(Argued June 2, 1913; decided June 13, 1913.)

MOTION to dismiss an appeal from an order of the Appellate Division of the Supreme Court in the first judicial department, entered April 8, 1913, reversing an order of Special Term in a proceeding to obtain the custody of an infant.

Further facts appear in the opinion.

*Ernest Hall* for motion.

*Harold J. Hinman* opposed.

CHASE, J. This is a proceeding to obtain the custody of Augusta Mildred Meyer, an infant born June 14, 1909. A few months after her birth her parents ceased living together. From about that time until April 9, 1911, when her mother died, she and her mother lived with her maternal grandfather, the respondent Edward Robitzek, and his family, in New York city and other places.

On October 14, 1910, her parents executed a written agreement of separation in which it is recited that "They have for some months past been living separate and apart from each other and they have consented and agreed and do hereby consent and agree to live separate and apart

1913.]          Opinion, per CHASE, J.          [209 N. Y.]

from each other in the future and during their natural lives." It is also therein provided that "The party of the second part (the mother) for life shall have the sole custody·and control of the only issue, Augusta M. Meyer and of its education without any interference whatsoever on the part of .the other parties hereto. * * * But nothing herein contained shall prevent the parties to this agreement while having custody of said child to transfer said child or the custody of said child to the grandparents of said child."

A few days after the death of the infant's mother and on April 21, 1911, this proceeding was commenced and a writ of habeas corpus was issued to bring the infant before the court and it resulted in an order dated June 1, 1911, which awarded the custody of the infant to the relator, the father. The order further provided that the respondent and his wife, the maternal grandparents of said child, be permitted to visit the child "once in each week either at the home or residence of said Leopold Alfred Meyer in the City of New York or in such other place as said infant may reside, without any hindrance or interference of said Leopold Alfred Meyer or other person having actual custody of said infant; or that said infant Augusta Mildred Meyer be taken to the residence of said Edward Robitzek in the Borough of the Bronx in the City of New York once in each week for at least six (6) hours * * *." It also provided "That said Augusta Mildred Meyer be taken to the residence of said Edward Robitzek in the Borough of the Bronx, City of New York, and remain at said residence with said Edward Robitzek and Augusta E. Robitzek and allowed to visit with them without hindrance or interference of said Leopold Alfred Meyer or any other person having custody of said infant for a period of at least six (6) days in each and every month."

Pursuant to said order the infant was delivered to her father. An appeal was then taken by both parties to the

[209 N. Y.]            Opinion, per CHASE, J.            [June,

proceeding. The Appellate Division on October 20, 1911, reversed the order of the Special Term and ordered that it be referred to a referee "To take proof of the several matters stated in the petition and in the return of the respondents, and the traverse to said return, and to report thereon to a Special Term of this court with his opinion thereon with all convenient speed."

It was further ordered that the infant be returned to the custody of Edward Robitzek and Augusta E. Robitzek and she was thereupon returned to them. A hearing was had before the referee at great length and he reported thereon "With some regret that in my (his) opinion the custody of the child in question should be given to Mr. Meyer, the relator."

In the meantime Augusta E. Robitzek died. The referee further reported that the relator Edward Robitzek and his daughter Hazel should be allowed to visit the child at reasonable times and that the child should be taken at reasonable intervals to the home of Edward Robitzek to remain for reasonable periods of time. The report of the referee was confirmed and an order dated June 16, 1912, was made directing that the infant be delivered to her father; and it further provided that Edward Robitzek and his daughter Hazel "shall have the right to take the child to his residence in the borough of the Bronx, City of New York, once in each month to remain at such residence with such respondent for the last six days of each and every calendar month." It also provided "That the said respondent Edward Robitzek and his daughter Hazel shall also have the privilege of visiting the child at the residence of the relator once in each week for the remaining weeks for each and every month and of remaining with the said child unmolested at such residence for three hours on each such visit and also the privilege to take said infant out of the house of the relator for said period of three hours." It also provided "That during the months of July and August of this

year if the petitioner shall take his child to the City of Lawrence, Massachusetts, and said child shall remain there during those two months the above provisions regarding the privileges of the said respondent Edward Robitzek shall be suspended during the said two months of this year except that the said respondent Edward Robitzek or his daughter Hazel shall be notified where said child is located, and that he and his daughter Hazel shall have the privilege of visiting said child once each week." The infant was delivered to the appellant and both parties appealed from the order. The Appellate Division on April 4, 1913, reversed the order appealed from and made a further order as follows: "That the custody of the infant Augusta Mildred Meyer be and the same hereby is awarded to the said Edward Robitzek and his daughter Hazel Robitzek jointly and that the relator upon receipt of a duly certified copy of this order do forthwith deliver said infant to said Edward Robitzek and Hazel Robitzek and that the relator Leopold Alfred Meyer be permitted to visit said infant at the home of said Edward Robitzek on Sunday in each and every week between the hours of 10 A. M. and 6 P. M. on said day without interference from said custodians."

On April 10, 1913, an appeal was taken by said Leopold Alfred Meyer to this court. Soon after the order of July 16, 1912, was made and he obtained possession of the infant, the appellant removed from New York city to Boston, Massachusetts, and took said infant with him. While the appeal was pending in the Appellate Division and on the 26th day of March, 1913, the respondent went to Boston to obtain said infant for the last six days of the month of March, as provided by said order of July 16, 1912. The respondent there saw the infant and the appellant said to him: "I have made up my mind not to give you the child, you can see the child and stay here as long as you like." He further said, in substance, that he would not give up the child because he wanted the respondent

to spend his money in order to obtain the child. The appellant also said to respondent: " I will tell you if the decision goes against me I will not give up the child alive * * * I would rather go to jail than give up the child, even if I am in contempt I will not give up the child." The respondent then returned to New York.

The decision of the Appellate Division was handed down April 4, 1913, and a relative of the appellant telegraphed him at Boston stating the decision of the court. The appellant thereupon sailed for London, England, taking the infant with him, and he has since remained and now is away from the United States. The order was entered April 8, 1913, and an effort has since been made to serve a copy of it upon appellant, but for the reason stated the appellant has not been found, and the order has not been personally served upon him. Before leaving this country he directed his attorney to bring an appeal to this court which has been done, as stated. Such appeal is now ready for argument in this court, but the attorney for the respondent moves that the appeal be dismissed because the appellant has left the jurisdiction of the courts of this state and taken the infant with him with intent to avoid a compliance with any order that the court has made or may hereafter make in this proceeding by which he is or may be required to give up the custody of said infant.

The appellant is represented by counsel, and urges in opposition to the motion that he has given an undertaking to perfect his appeal pursuant to the provisions of section 1326 of the Code of Civil Procedure, and that all proceedings to enforce the order appealed from are thereby stayed, and that by reason of such stay the motion of the respondent should be denied. The appellant has not obtained an order from any court by which the enforcement of the provisions of the order of April 4, 1913, are stayed. It is contended that it is necessary, in determining whether the motion to dismiss the appeal should be granted, to decide whether perfecting an appeal to this

court resulted without a further undertaking or order of the court in staying the enforcement of the order from which the appeal is taken. We are of opinion that the appeal did not of itself constitute a stay.

It is a rule of almost universal application that a perfected appeal does not stay the execution of the judgment or order appealed from, and that to obtain a stay certain statutory requirements must be complied with either as to giving an undertaking or getting an order of the court. While an appeal regularly taken and perfected is taking its course in the appellate court the respondent may, notwithstanding, unless stayed, proceed to enforce his judgment or order, and the appellant's only remedy is to enforce restitution when he becomes entitled to it. (Baylies on New Trials and Appeals, 75; Wait's Practice, vol. ℈, p. 271; Nichols' New York Practice, vol. 4, pages 3739 and 3740.)

It is urged that section 1310 of the Code of Civil Procedure is express authority for a stay in this case. That section, so far as it affects the question now under consideration, provides that "Where an appeal is to the general term of any court or to the appellate division of the supreme court or to the court of appeals or otherwise has been heretofore or shall hereafter be perfected, as prescribed in this chapter, and the other acts, if any, required to be done, to stay the execution of the judgment or order appealed from, have been done, the appeal stays all proceedings to enforce the judgment or order appealed from    *    *    *."

The contention in this case is that there are no acts other than perfecting an appeal required to be done to stay the execution of the order.

Even under the specific language of sections 339 and 342 of the Code of Procedure it was held in *Post* v. *Doremus* (1 Hun, 521, 522) that "the only way in which they (the proceedings in the court below) can be stayed, after an order for a new trial has been made (by the general term of the supreme court) is by a motion directly to the court

for that purpose, where the proper terms can be imposed as to security " so as to protect the respondent against loss if the court of appeals should affirm the order. In the same case in this court (60 N. Y. 371, 375), referring to the appellant, who gave the undertaking in controversy, the court say: " It is plain, too, that if his object was to stay the proceedings of Post upon that order, the mere giving of the undertaking, as large as it was, did not effect that object. For that object could not be attained by him by any act of his alone, nor otherwise than by the order of the Supreme Court to that end, or by the stipulation thereto of his opponent. (*Coithe* v. *Crane*, 1 Barb. Ch. 21; *McMahon* v. *Allen*, 22 How. Pr. 193.) "

The specific language in regard to a stay contained in sections 339 and 442 of the Code of Procedure was omitted from the Code of Civil Procedure. In place of such specific language general language is used in said section 1310, and in view of the rule said to be of universal application that perfecting an appeal does not stay the execution of the judgment or order appealed from unless certain statutory requirements are complied with or an order granting a stay is obtained, the words " other acts if any required to be done " used in that section should not be construed as confined to acts required by statute, but should be construed to include those required by the practice of the courts as it had theretofore existed. This is especially true so far as it relates to orders in special proceedings and actions. Such orders were not expressly included in sections 339 and 342 of the Code of Procedure. The language of section 1310 of the Code of Civil Procedure has, with two or three exceptions, been uniformly construed by the courts against the appellant's contention. In *Taft* v. *Marsily* (49 Hun, 163, 165), in which said section 1310 was under consideration, the court say: "The rule under the old Code was, that where the statute did not expressly require security to be given as a condition precedent to a stay, proceedings could only be stayed by order,

in which case the order might require such security to be given as was necessary to protect the interests of the respondent."

The court after quoting from *Post* v. *Doremus* (*supra*), further say: " The presence of the words ' if any ' in section 1310 of the Code of Civil Procedure, afford some support to the appellant's construction of that section. In our opinion, however, the legislature did not intend, by the introduction of these words, to change the pre-existing law as found in those provisions of the former Code of which the present section is made up. * * * When this section was enacted, what were the other acts, in addition to perfecting the appeal, required to be done, in order to stay proceedings? One of these acts was to obtain an order expressly directing a stay, except in those cases where the statutes provided for a stay upon giving security. We do not think the change of phraseology due to the revision and amplification of the old Code of Procedure has dispensed with the necessity of such an order, where it is desired to stay proceedings upon an appeal from an order granting a new trial."

In *Steinback* v. *Diepenbrock* (5 App. Div. 208, 211), in a special proceeding the court considering said section 1310 refers to the provisions of the Code of Procedure and say: " We find in this new Code substantially the old provisions with regard to security in the same class of cases. But the general provision for a stay in all other cases, upon a mere undertaking such as is required to perfect the appeal, is omitted. * * * Thus it was clearly intended to leave unclassified cases to the sound discretion of the court, where, indeed, such cases properly belonged. It was always an inconvenience, and frequently resulted in injustice, to be bound by an iron-clad rule with regard to stays upon a mere undertaking for costs in cases not specially provided for. The omission in the new enactment of the old provision was wise and in the interest of justice."

Even a stay by order of the court does not permit a violation of a specific injunction contained in a judgment or order from which an appeal is taken. (*Sixth Avenue R. R. Co.* v. *Gilbert Elev. R. R. Co.*, 71 N. Y. 430; *Genet* v. *Prest., etc., D. & H. C. Co.*, 113 N. Y. 472; *Howe* v. *Searing*, 6 Bosw. 684.) In this case the infant is the subject of controversy, and unless the courts of this state can enforce any order that may be made herein the hearing upon the appeal is of no more practical value than a moot case. If an order relating to the custody of an infant is to be of any value the infant must be within the power and control of the court. A proceeding by habeas corpus, so far as it depends upon the custody of the person, is not unlike a criminal proceeding. The whole theory of criminal proceedings is based upon the idea of the defendant being in the power and control of the court in his person. (*People* v. *Genet*, 59 N. Y. 80; *Smith* v. *U. S.*, 94 U. S. 97.) In the *Smith* case the appellant had escaped from custody. The court before whom Smith was an appellant say: "If we affirm the judgment, he is not likely to appear to submit to his sentence. If we reverse it and order a new trial, he will appear or not, as he may consider most for his interest. Under such circumstances, we are not inclined to hear and decide what may prove to be only a moot case."

The appellant's intention to violate the orders of the court if necessary to retain the custody of the infant was openly asserted at the interview of March 26. He not only failed to produce the infant for the purpose of obeying the order of July 16, 1912, but at such interview he expressly stated that if the decision of the court at the Appellate Division was against him he would not obey it. He arranged to be informed of the decision of the Appellate Division at the earliest possible moment after it was handed down and after obtaining the information and before it was possible to enter the formal order and serve the same upon him and some days before an appeal was

taken from the order by the Appellate Division to this court he left the United States taking the infant with him. The statements now before us are undisputed and show that the appellant does not intend to obey the order from which the appeal is taken or any other order which may be made in favor of the respondent after the decision of this court on the appeal. He chooses to resort to this court and hopes to obtain a reversal of the order of the Appellate Division, assserting at the same time that if he fail in his purpose he will not obey the decision of the court. To avoid being thwarted in his purpose he contemptuously and intentionally puts himself and the infant far beyond the reach of local process.

Under the circumstances narrated the appeal should be dismissed, unless the appellant submit himself and the infant to the jurisdiction of the courts of this state and argues this appeal on or before a day to be named by this court or complies with such other reasonable conditions as the court may prescribe. (*People ex rel. Hamilton* v. *Police Commissioner N. Y. City,* 185 N. Y. 594; *People ex rel. Winston* v. *Winston,* 31 App. Div. 121; 25 Misc. Rep. 676; *Matter of O'Byrne,* 55 Hun, 438; *Keenan* v. *O'Brien,* 53 Hun, 30; *McMonagle* v. *Conkey,* 14 Hun, 326; *Matter of Strauss,* 157 N. Y. 720; *Matter of Norton,* 158 N. Y. 130.)

Motion to dismiss appeal granted and appeal dismissed, with costs of appeal and ten dollars costs of motion, unless the appellant on or before October 20, 1913, complies with the order of the Appellate Division as to custody and possession of the infant or complies with the terms that may be imposed on him by the Supreme Court as a condition of granting a stay of proceedings under order appealed from.

CULLEN, Ch. J., GRAY, WILLARD BARTLETT, HISCOCK, HOGAN and MILLER, JJ., concur.

Motion granted, etc.