Victor L. Anfuso, J.
Petitioner, who shall remain nameless, is an unwed mother and a minor. She seeks through this habeas corpus proceeding directed to the respondent Talbot Perkins Adoption Service, hereinafter referred to as the “Adoption Agency ” to regain custody of her child born on August 28, 1964. The child was placed with the respondent by the Commissioner of Welfare of the City of New York. On consent, the Commissioner of Welfare is made a respondent to the pro *370 ceedings. The putative father of the child abandoned and deserted the mother prior to the birth and his whereabouts are unknown. Petitioner is presently residing with her parents.
Upon application of petitioner’s mother that the petitioner was a person in need of supervision, the Family Court of the City of New York, County of Queens, remanded the petitioner to be cared for at the Euphrasian Residence in the Borough of Manhattan for a period of about two months and then paroled pending placement plans. She subsequently was cared for at the Inwood Residence in the same borough, and on August 28, 1964, she gave birth to a baby girl in the New York Hospital in the same borough.
On September 1, 1964 petitioner signed an authorization for commitment of her child to the custody and care of the Commissioner of Welfare of the City of New York. Pursuant to the provisions of the authorization the Commissioner of Welfare placed the child with the Adoption Agency.
After the birth of the child, the Department of Welfare discussed with petitioner’s parents their responsibility towards contributing to the cost for petitioner’s shelter.
On September 25, petitioner, after a discussion with a representative of the Adoption Agency, requested that her child be placed in a Jewish home although she herself is of the Protestant faith.
On September 29, the day the petitioner brought the child to the Adoption Agency office, she signed an instrument giving physical custody to the Adoption Agency for adoptive planning. At the present time the child is being cared for by a family selected by the Adoption Agency.
On November 24 petitioner, after discussing the pros and cons of adoption with a representative of the Adoption Agency, and in view of her father’s objection to her taking her child home, stated that she was ready to sign the required surrender paper for her child’s adoption.
On December 4 petitioner telephoned the Commissioner of Welfare and an appointment was made for her to sign the surrender paper on December 11. The signing of this paper was adjourned at petitioner’s request to December 22. On December 21 the Commissioner of Welfare was informed over the telephone by an attorney that petitioner’s parents want petitioner to regain control of her child. On December 22 petitioner appeared at the office of the Department of Welfare and stated that she wanted her child returned to her for private adoption through an attorney; that the prospective adoptive family would pay petitioner’s prenatal and hospital *371 bills to the City of New York. Petitioner never signed thec' surrender paper.
Upon the hearing, petitioner testified that she did not want her child for herself; that she could not take care of her child; that she wanted a doctor and his wife which she described as a desirable couple to have her child, although she never met them, does not know who they are and knows nothing about their background.
The law is sufficiently well-established without requiring the citation of legal authority that a natural parent has a right to the care and custody of the child superior to that of all others unless the proof discloses that the parent has abandoned that right or that the parent is unfit to assume the duties and privilege of parenthood. The welfare of a child is paramount to the natural rights of a parent (Matter of Presler, 171 Misc. 559).
“ It is now too well settled to require fortification by extended citations from cases that, in determining to whom the custody of an infant of tender years shall be confided, the paramount and controlling consideration is the welfare of the infant. To this all other considerations must be subordinated including the wishes of the parents ”. (Matter of Meyer, 156 App. Div. 174, 176, mot, to dismiss app, granted 209 N. Y. 59.)
‘ ‘ From birth an infant is a ward of the State. It stands in the relation of parens patriae. In this and similar proceedings the fundamental consideration is the welfare of the infant. (People ex rel Converse v. Derrick, 146 Misc. 73, 77, 78.) ” (Matter of Presler, 171 Misc. 559, 562, supra.)
Subdivision 1 of section 383 of the Social Welfare Law provides that “ The parent of a child remanded or committed to an authorized agency shall not be entitled to the custody therof, except upon the consent of the court, public board, commission, or official responsible for the commitment of such child, or in pursuance of an order of a court or judicial officer of competent jurisdiction, determining that the interest of such child will be promoted thereby and that such parent is fit, competent and able to duly maintain, support and educate such child.”
‘ ‘ The legislative solicitude that ‘ the interest of such child will be promoted ’, is statutory codification of the judicial norms governing the determination of common-law writs of habeas corpus relating to the custody of children. It has been stated that ‘ in the case of an infant of an age to be incapable of determining what was best for itself, the court or officer made the determination for it, and in so doing, the child’s welfare was the chief end in view ’ (People ex rel. Pruyne v. Walts, 122 N. Y. 238).” (People ex rel. Gramet v. Free Synagogue Child Adoption Com *372 mittee, 194 Misc. 332, 337, mot. to dismiss app. granted 275 App. Div. 832.)
In determining whether the welfare of the child will be promoted by returning the child to the parent, the court must consider the motivation of the parent in seeking the child’s return. If the motivation is improper then custody to the parent should be denied.
Petitioner in her testimony has made her position abundantly clear. She does not seek to regain custody for the purpose of providing her child with a home, support, maintenance, love, to educate and observe her growth and development under the guidance of a devoted and loving mother, but rather for the sole purpose of effectuating a private adoption with a family about which she knows nothing whatsoever.
It is apparent to the court that the guiding force and spirit behind petitioner’s application are her parents. Their interest is not the welfare of petitioner and her child but their freeing themselves from their obligation to pay petitioner’s prenatal and hospital charges. In a private adoption they see themselves free from this obligation since the proposed adoptive parents will pay these charges.
The Commissioner of Welfare having rightful custody by virtue of petitioner’s signed authorization for commitment was fully justified under subdivision 1 of section 383 of the Social Welfare Law in refusing to consent to the return of the child to petitioner. The fact that the surrender instrument was not signed, is not the controlling factor.
In People ex rel. Choolokian v. Mission of Immaculate Virgin (192 Misc. 454, affd. 274 App. Div. 1049, mod. 300 N. Y. 43, mot. to amend remittitur den. 300 N. Y. 622, cert. den. 339 U. S. 912) a father who voluntarily committed the care of his children to the custody of the Commissioner of Welfare brought a habeas corpus proceeding to regain their custody for the purpose of taking them with him to Soviet Armenia. The court at Special Term dismissed the petition upon the ground that the welfare of the children would not be promoted thereby with leave, however, to a renewal thereof upon a showing that the interests of the children would be promoted by his taking them out of the country and that he is fit and able to maintain, support and educate them. In its decision the court at page 463 said: ‘ ‘ the children having been voluntarily committed to the care of the department of welfare-and the defendants, section 383 of the Social Welfare Law bars their return unless the consent of the department is given or this court determines that the interest of the children will be promoted and that the father *373 is fit, competent and able to duly maintain, support and educate them.”
The Court of Appeals modified the order of affirmance by the Appellate Division and the order of Special Term by deleting therefrom the provisions for the making of a further application and as modified affirmed.
Under all the circumstances the court is satisfied that the welfare of the child would not be promoted by granting petitioner’s writ.
In view of this disposition the court has not considered the issue of religion of the proposed adoptive parents. The writ is dismissed.